FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant, *v.*
J. G. McCRORY COMPANY, Respondent.

First Department, April 20, 1917.

Insurance — provisions of contract for renewal construed — delivery
of renewal policies to broker of insured — recovery of premiums.

Where an insurance company issues general liability policies of indemnity
insurance for a period of twelve months, with indorsements thereon
having the force and effect of an order for a renewal for two consecutive
terms of twelve months each, and delivers renewal policies to the
broker of the insured on the day before the termination of the first period
of insurance, and about two days before the dismissal of such broker, its
refusal to give the certificates of renewal to a new broker of the assured
is not a violation or repudiation of its agreement.

But where said company refused to consider claims by the assured upon
the ground that the policies had not been renewed it will be deemed to
have consented to the cancellation thereof, and cannot recover pre-
miums for the renewal periods, as an action therefor must proceed upon
the theory that the policies are still in force.

APPEAL by the plaintiff, Fidelity and Deposit Company of
Maryland, from a judgment of the Supreme Court in favor
of the defendant, entered in the office of the clerk of the county
of New York on or about the 7th day of March, 1916, upon
the verdict of a jury rendered by direction of the court.

*William H. Hotchkiss*, for the appellant.

*Louis J. Wolff*, for the respondent.

DAVIS, J.:

This action is brought to recover certain premiums alleged
to be due on three insurance policies.

The plaintiff as part of its business issues insurance policies
covering employers' liability and workmen's compensation.
The defendant owns many stores in different parts of the
United States, which gave occasion for the issuance of the poli-
cies referred to in this action.

The allegations of the complaint are in substance as follows:
In December, 1913, and prior to December 15, 1913, the plain-
tiff agreed to issue to the defendant and the defendant agreed

to accept certain policies of indemnity insurance covering a period of three years from December 15, 1913, in consideration of certain premiums to be specificed in the policies; that on December 15, 1913, pursuant to this agreement three general liability policies were issued by plaintiff to defendant numbered 1625913, 1625914 and 1624762 respectively, and that defendant agreed to pay the premiums mentioned in the policies according to their terms; that under the terms of the policies as shown in the indorsements thereon, because of the agreement for a three years' insurance, a reduction of ten per cent in the gross premium for three years was allowed the insured, and in consideration of said reduction it was agreed that the indorsement referred to should have the force and effect of an order for renewal for two consecutive terms of twelve months each; that under the respective indorsements on the three policies the defendant was bound to pay as premiums, on policy No. 1625913, $2,810.74 payable as advance premium the first year, $1,686.44 to be paid on the first anniversary of the policy, and $1,124.30 to be paid on the second anniversary of the policy, and similarly on policy No. 1625914, $112.70, $67.62 and $45.08, on policy No. 1624762, $84.04, $50.42 and $33.62. The complaint further alleges that the assured shall have no election to cancel these policies or their renewals unless he is retiring from business; that the policies were delivered and accepted by the defendant and remained in full force and effect during the first policy year up to and including twelve o'clock noon of the 15th of December, 1914, and that the plaintiff had fully performed its part of the contract; that upon the expiration of the first policy year and on or about December 15, 1914, plaintiff tendered to the defendant certificates of renewal of the policies in question in accordance with the terms of the contract between the parties, and that defendant refused to accept the renewals in violation of the terms of its contract to accept insurance for three years and in violation of the indorsements attached to the various policies; that defendant has refused to comply with the terms of the policies and to continue the insurance and has failed to pay the premiums for the renewal periods of twelve months each from December 15, 1914, being $2,036.84 and $1,357.86 on policy No. 1625913, $85.18 and

$56.78 on policy No. 1625914, and $50.42 and $33.62 on policy No. 1624762, a total of $3,620.70. The complaint then continues with an allegation of plaintiff's readiness and willingness to perform all the conditions of the agreement to furnish insurance to defendant and that it has been ready and willing to perform at all times since December 15, 1913, and concludes with a demand for judgment of $3,620.70, with interest from December 15, 1914, which is the total amount of the premiums for the second year's insurance.

The answer admits that the policies in question remained in force and effect during the first year up to and including twelve o'clock noon of December 15, 1914, but denies performance of the agreement by the plaintiff and specifically denies the tender of certificates of renewal by plaintiff and the rejection of the certificates by defendant in violation of the agreement. Defendant also denies that it has failed to keep its contract with the plaintiff and that it has refused to pay the premiums in violation of the agreement, and it further denies that plaintiff has been ready and willing to perform. The answer then sets up two counterclaims, alleging in the first counterclaim due performance by the defendant. It also alleges that on or about December 15, 1914, the plaintiff refused to deliver said renewal certificates for the second year when the defendant requested them and offered to pay for them, and alleges damages in the sum of $2,055.47. The second counterclaim is for recovery back of $325 unearned premium for the first year of the policies ascertained by an audit made during the first year.

The issue presented by these pleadings is simply whether the plaintiff tendered the defendant renewals of the policies according to the terms of the agreement under which the policies were issued. The terms are not in dispute.

The evidence shows that an agreement to insure was entered into prior to December 15, 1913, and that pursuant to that agreement the policies in question were issued by plaintiff to defendant covering the period from December 15, 1913, to and including twelve o'clock noon of December 15, 1914. In this transaction the defendant was represented by a broker named Hebbard, whose commissions according to custom were

deducted by him from the premiums before they were paid over to the plaintiff. On December 8, 9 or 10, 1914, the plaintiff gave renewal certificates to Hebbard for delivery to the defendant. These certificates were received by defendant on December 14, 1914, which was one day before the end of the first year period. The defendant retained these certificates until December 23, 1914, when it returned them to Hebbard by mail in a letter to him reading as follows:

"DEAR SIR.— We are returning herewith various policies of the Fidelity & Deposit Co. which we instructed you about *December 12th* not to renew. Will you kindly arrange to see that these policies are cancelled from date of issue and oblige,"

(Signed by defendant).

On December 12, 1914, Hebbard received a letter from the defendant dated on the eleventh dismissing him as its broker and stating that defendant's insurance after December 15, 1914, would be cared for through other brokers.

Thereupon Hebbard wrote defendant a letter inclosing the renewals in question which, as already stated, were received by defendant December 14, 1914, and advising the defendant to reconsider the matter. With the controversy thus created between defendant and its agent the plaintiff has no concern. It does not affect the dispute between the plaintiff and defendant. We now come to the particular evidence which defendant relies upon to establish the default of the plaintiff. The defendant employed Hadfield as its broker after the dismissal of Hebbard. Hadfield testified that on December 12, 1914, he called on the plaintiff on behalf of the defendant and asked for the renewals covering the second year's insurance; that the defendant refused to comply with his demand, assigning as a reason for its refusal that the renewals had already been delivered to Hebbard and, furthermore, that to do so would subject plaintiff to liability for commissions to two brokers. Thereupon Hadfield went immediately to another insurance company and obtained other insurance of the same kind. The new insurance cost defendant $5,676.17. The amount payable to the plaintiff for its insurance was $3,620.70, and a verdict was directed for the defendant for the difference between those

amounts, and judgment was entered in favor of defendant for $2,456.94 and the complaint of the plaintiff was dismissed.

It thus appears that the plaintiff delivered the renewals to defendant's broker Hebbard at the latest on December 10, 1914, about two days before Hebbard was dismissed. At that time Hebbard was still defendant's broker, fully authorized and competent to receive and accept the renewals on defendant's behalf. It cannot be said that the delivery was premature or that plaintiff ought to have delayed delivery until the defendant requested it. Indeed, the parties had agreed that the indorsement on the policies giving the defendant a ten per cent reduction from the amount of the gross premiums should have the force and effect of *an order for* these very renewals. It was, therefore, quite within the right of the plaintiff in December, 1914, and before the fifteenth, to tender and deliver to the defendant through Hebbard, who was then defendant's authorized agent, the certificates of renewal.

It is quite clear that the delivery of the renewals to Hebbard on December tenth was a full compliance by the plaintiff with the terms of its agreement with the defendant and that the refusal to give certificates of renewal to Hadfield, the new broker, on December twelfth was not a violation or repudiation of that agreement. When the plaintiff refused to give the renewals to the second broker because it had already given them to Hebbard, it was a distinct affirmation of plaintiff's purpose to observe its contract with defendant.

It follows, therefore, that the defendant was not entitled to the verdict directed in its favor.

It remains to consider in what position certain other evidence not yet referred to leaves the plaintiff. Although the defendant retained the renewals until December twenty-third, it refused to pay the premiums for the second year period, and on that day it wrote Hebbard the letter of December twenty-third, referred to above, asking him to " arrange to see that these policies are cancelled from date of issue." Hebbard took the letter and the renewals to the plaintiff's office and gave them to Witschen, plaintiff's representative. Thereafter on December 30, 1914, the plaintiff wrote defendant a letter,

the material parts of which are as follows: "We are advised that our liability policies covering your various stores are to be returned for cancellation; the insurance having been placed in another company. * * * The cancelling of our policy is a very severe reflection on the integrity of this company and its service which we very strongly resent as we have given you exceptional service and there can be no complaint on this line."

It appears that the defendant made certain claims for accidents under one of the policies in question. The plaintiff refused to consider these claims on the ground that one of the policies in question had expired. This fact is shown in plaintiff's letter of January 4, 1915, in which it wrote the defendant, after setting out six claims for accidents: "We are enclosing herewith reports of accidents in the above cases. You will note that all of these accidents occurred subsequent to December 15th, upon which date Policy ⚹ 1625913 issued to you, by this Company, expired. As this Policy has not been rewritten in this Company, we return herewith reports and suggest that you turn them over to the company now carrying your liability insurance."

Again on March 24, 1915, the plaintiff, through its adjuster, wrote the defendant:

"DEAR SIR.—Your communication under date of March 23rd at hand and contents noted.

"In reply thereto, permit me to state that as you have no Employers' Liability Policy in force with this Company at this time or at the time when the accident in question happened, our Company is not interested and the matter will be given no further attention."

The conclusion necessarily to be drawn from this correspondence is, that the plaintiff consented to the cancellation of the policies and thereafter considered them as no longer in force. Its denial of liability under them is consistent with no other theory. It follows, therefore, that the plaintiff cannot recover these premiums in this action, which clearly proceeds upon the theory that the premiums are due because the policies are still in force. If the policies were canceled at the end of the first year nothing could become due thereon as premiums.

In my opinion the judgment in favor of the defendant should be reversed and the complaint dismissed, without costs to either party.

CLARKE, P. J., SCOTT, DOWLING and SMITH, JJ., concurred.

Judgment reversed and complaint dismissed, without costs.